UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRIAN KEITH SCHWAB,

                     Plaintiff,

v.

KENT COUNTY CORRECTIONAL
FACILITY et al.,

                     Defendants.
_____/

Case No. 1:20-cv-290

Honorable Janet T. Neff

## OPINION

       This is a civil rights action brought by a county jail pretrial detainee under 42 U.S.C. § 1983. Under Federal Rule of Civil Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been misjoined. Pursuant to that rule, the Court will drop as misjoined Defendants Corizon Health, Ernest McNeill, Unknown Devarmer, Unknown Party #1, K. Dykema, Unknown DeVries, Unknown Garcia, Unknown Party #2, Unknown Weber, Unknown Party #3, Unknown Party #4, Unknown Fliwenta, and Unknown Party #5, and dismiss Plaintiff's claims against them without prejudice.

       Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

standards, the Court will, with one exception, dismiss Plaintiff's complaint for failure to state a claim against Defendants Kent County Correctional Facility, Kent County Sheriff, and Rob Steele. Plaintiff's claim for violation of his right to access the courts because jail policy precludes him from using the law library to pursue collateral attacks on prior convictions will be served.

## Discussion

### I.     Factual Allegations

Plaintiff is presently housed in the Kent County Jail as a pretrial detainee.  The events of which he complains occurred at the jail.  Plaintiff sues the Kent County Correctional Facility, the Kent County Sheriff, and Corizon Health.  He also sues Officers Ernest McNeill, Unknown Devarmer, and Unknown Garcia; Sergeants Unknown Party #2 and Unknown Weber; Lieutenant K. Dykema; Mail Room Officers Unknown Party #1 ("P.V.") and Unknown DeVries; and Special Activities person Rob Steele.  In addition, Plaintiff sues Unknown Party #3 (Dr. John Doe), Unknown Party #4 (Nurse Jeanne), Psych Doctor Unknown Fliwenta, and Unknown Party #5 (Counselor Caroline) (the health care Defendants).

Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a).  Plaintiff's statement of his claims is neither short nor plain.

Plaintiff offers sixty handwritten pages that chronicle every unpleasant thing that has happened to him during his long stay in pretrial detention.[1]  Plaintiff includes seventeen pages

---

[1] Plaintiff is charged with first-degree criminal sexual conduct (victim under 13) (CSC-I), second degree criminal sexual conduct (victim under 13), possession of child sexually abusive material, sex-offender failure to register, use of a computer to commit a crime, identity theft, and impersonating a police officer to commit a crime; he has also received notices of sentence enhancements.  *See* https://www.accesskent.com/InmateLookup/showCharge (search "Brian Schwab" visited April 14, 2020).  If Plaintiff is convicted of the CSC-I charge, because of his record, he will receive a mandatory sentence of life imprisonment without the possibility of parole.  Mich. Comp. Laws § 750.520b(2)(c).

that are just citations to authority.  (Compl., ECF No. 1, PageID.42-58.)  For the most part, Plaintiff simply borrows language from those authorities to state conclusions, instead of facts.   He sometimes refers to specific Defendants with respect to specific factual allegations, but he also often refers to Defendants as collectively taking or refusing to take some action.  He includes a key at the beginning of his complaint that, having assigned each Defendant a number, identifies which paragraphs of the complaint apply to each Defendant.  The key is somewhat helpful, but even with the key the allegations are difficult to follow.  Moreover, it is apparent that, often, the paragraph numbering in Petitioner's key is off by 1 or 2.

Once you sift through Plaintiff's allegations with the key in hand (and adding 1 or 2 to each paragraph number in the key, as appropriate), you can separate the complaint into specific claims.  In paragraphs 1-15, Plaintiff complains of general conditions in the jail, i.e., it is too cold, there is black mold in the showers, there are insufficient cleaning supplies and insufficient hygiene supplies, and there is not enough hot water.

Paragraphs 16-56 relate to Plaintiff's medical needs.  He claims he needs a special diet, accommodations for back pain, dental work, physical therapy, medications, and psychological treatment.  Plaintiff's allegations usually refer to "officials," but occasionally mention one of the four health care Defendants and perhaps implicate Corizon.  Plaintiff's allegations are not sufficiently specific to know for each of his medical concerns which Defendant failed to provide which type of care.  Although Plaintiff uses the phrase "deliberate indifference" to describe the health care Defendants' conduct, he uses it in a conclusory fashion and it is difficult to discern facts to support his claim of deliberate indifference for most of his ailments—his problems with soy, however, are set out in some detail.

Beginning with paragraph 57 and continuing through paragraph 108, however, Plaintiff describes an event with some specificity involving Defendants McNeill and Devarmer. McNeill disregarded a threat to Plaintiff's safety from another prisoner. That threat turned into a physical confrontation. Plaintiff was pulled from the altercation with excessive force and McNeill, and then Devarmer, continued to use excessive force as they escorted Plaintiff to segregation.

In paragraph 109 through 112, Plaintiff complains that he was not provided enough exercise.

In paragraphs 113 through 115, Plaintiff complains Defendants Unknown Party #1 ("P.V."), K. Dykema, and Unknown DeVries interfered with his outgoing mail. In paragraphs 116-145, Plaintiff complains that Defendant Sheriff has adopted a policy that denies him access to the courts by restricting access to the law library to those who do not have an attorney, have not refused an attorney, and are not eligible for an attorney, a policy enforced by Defendant Steele; Defendant Dykema interfered with Plaintiff's access to the courts by telling Plaintiff's friends and family to not send Plaintiff legal forms and research results; and Defendants Weber and Dykema denied Plaintiff access to the courts by intercepting Plaintiff's kites to the administration.

In Paragraphs 146-150, Plaintiff claims that roughly 15 unnamed officers shook down his cell and "messed with" or confiscated papers relating to this lawsuit and prison officials do not provide means to make sufficient copies.

In paragraphs 151-159, Plaintiff complains that Defendant Garcia harassed him and arranged to have his cell shaken down while she interviewed him regarding some found medication.

In paragraphs 160-162, Plaintiff complains that "another time" unnamed officers retaliated against him for a kite to the captain by shaking down his cell and leaving it "destroyed."

In paragraphs 163-168, Plaintiff complains that during a cell search officers confiscated legal paperwork, including privileged materials.

In paragraphs 169-178, Plaintiff complains that he was denied due process by Defendant Dykema and Defendant Unknown Party #2 when he was put in segregation three times and his mail was rejected once.

In paragraphs 179-200, Plaintiff identifies the constitutional violations and state torts that Defendants are "guilty" of.

## II.    Misjoinder

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This does not mean, however, that parties should be given free rein to join multiple plaintiffs and multiple defendants into a single lawsuit when the claims are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (adopting magistrate judge's report).

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor*, 661 F. Supp. 2d at 778, and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact."  *Proctor*, 661 F. Supp. 2d at 778.  When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts [] . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'"  *Id.* (quoting *Nali v. Michigan Dep't of Corr.*, No. 07-10831 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that

were being filed in the federal courts.  *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).  Under

the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some

form.  *See* 28 U.S.C. § 1915(b)(1).  These "new fee provisions of the PLRA were designed to deter

frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by

liability for filing fees."  *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997).  The PLRA

also contains a "three-strikes" provision requiring the collection of the entire filing fee after the

dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in

forma pauperis, unless the statutory exception is satisfied.  28 U.S.C. § 1915(g).  The "three

strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation.  *See Wilson

v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

      The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one

complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies

the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166,

168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

on actions taken after the filing of his original complaint would have defeated the purpose of the

three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998);

*Shephard v. Edwards*, 2001 WL 1681145, *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should his claims turn out to be frivolous.

The first named Defendant is the Kent County Correctional Facility—the jail itself. But, the jail is a building, not an entity capable of being sued in its own right. *See, e.g., Watson v. Gill*, 40 App'x 88, 89 (6th Cir. 2002) ("The . . . Jail is not a legal entity susceptible to suit. . . . [T]he . . . Jail is a department of the county, the county is the appropriate party . . . ."). Construing Plaintiff's pro se complaint with all required liberality, *Haines*, 404 U.S. at 520, the court assumes that Plaintiff intended to sue Kent County. Accordingly, the Court directs the Clerk to substitute Kent County as a Defendant in the place of Kent County Correctional Facility.

Regardless of the form of relief sought, a county is liable under § 1983 only when its official policy or custom causes the injury. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 32-33 (2010) (citing *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the

governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.

Plaintiff's complaint references a county policy in only one section, paragraphs 119-145. Plaintiff complains that the county's policy unconstitutionally limits the circumstances under which an inmate is permitted to use the law library. Other allegations, though they do not specifically mention that the county has adopted an unconstitutional policy, liberally construed, at least permit the inference that Plaintiff is complaining about a generally applicable custom. Those allegations include Plaintiff's claims that the jail is too cold (paragraphs 1-6); provides inadequate cleaning supplies (paragraphs 7-10), inadequate hot water (paragraph 11), and inadequate hygiene supplies (paragraphs 12-15); and does not permit sufficient exercise (paragraphs 109-112). Those allegations, however, are the only allegations that could support a municipal liability claim under § 1983.

Plaintiff's claims against other Defendants might be transactionally related to the "custom or policy" claims. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe Cty.*, 520 U.S. 781, 784-85 (1997). In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. Mich. Comp. Laws § 51.75 (sheriff has the "charge and custody" of the jails in his county); Mich. Comp. Laws § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); Mich. Comp. Laws § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of

operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Therefore, Plaintiff's claim against the sheriff, to the extent the sheriff has made or executed the policy, is transactionally related to Plaintiff's "policy and custom" claims against the county.

Moreover, to the extent Plaintiff alleges that any particular individual Defendant applied the unconstitutional policy to Plaintiff, that claim would also be transactionally related to the "policy or custom" claims against the county. Here, Plaintiff contends that Defendant Steele applied the unconstitutional law library policy to Plaintiff; therefore, Plaintiff's claim against Defendant Steele for that wrong are properly joined to Plaintiff's claims against the county. None of Plaintiff's other "policy or custom" claims, however, are raised against any of the other Defendants. Once you adjust Plaintiff's key numbers, the claims raised in paragraphs 1-15 and 109-112 are raised only against the county and the sheriff.

Despite the significant limit on municipal liability, Plaintiff's key reveals that he believes Kent County is liable not only for the "policy or custom" claims, but for every constitutional violation alleged in the complaint (paragraphs 1-200). The apparent source of that liability, however, is the county's role as the employer of the other individual wrongdoers.

A municipality may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. With regard to Plaintiff's allegations against Defendants McNeill, Devarmer, Garcia, Unknown Party #1, DeVries, Weber, Unknown Party #2, Dykema, Unknown Party #3, Unknown Party #4, Fliwenta, Unknown Party #5, and Corizon, that appear in paragraphs 16-108, 113-118, 146-180, 182-200, Plaintiff seeks to impose liability on Kent County vicariously for the actions of its employees or contractors. His factual allegations do

not permit an inference that the county might be liable for any reason other than its employment of or contractual relationship with the Defendant who has allegedly violated Plaintiff's constitutional rights.

Because the only connection between Plaintiff's claims in the paragraphs listed above against the parties listed above is an utterly meritless suggestion that the county is liable under § 1983 for the conduct of its employees, the Court concludes there is no transactional relationship between those claims and the "policy or custom" claims discussed above. The same result follows if one considers Plaintiff's broad claims against the sheriff. Plaintiff also suggests the sheriff might be liable for all of the misconduct of other Defendants named in the complaint either because he is their superior, or because he was made aware of the problems by Plaintiff's complaints yet the sheriff failed to correct the problems. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Plaintiff's vicarious liability or respondeat superior claims against the county and the sheriff and his "failure to fix" claims against the sheriff are meritless and therefore cannot serve as the bridge to connect his "policy or custom" claims to his other claims against the individual defendants. Accordingly, Plaintiff's claims against Defendants McNeill, Devarmer, Garcia,

Unknown Party #1, DeVries, Weber, Unknown Party #2, Dykema, Unknown Party #3, Unknown Party #4, Fliwenta, Unknown Party #5, and Corizon are misjoined.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action."   Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See Grupo Dataflux v. Atlas Glob. Gr., L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate.").  "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'"  *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties."  *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845.  Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice.  *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

12

In this case, Plaintiff brings his causes of action against the improperly joined defendants under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the actions about which Plaintiff complains appear to have occurred in 2019 or 2020, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dropped and the claims against them dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants McNeill, Devarmer, Garcia, Unknown Party #1, DeVries, Weber, Unknown Party #2, Dykema, Unknown Party #3, Unknown Party #4, Fliwenta, Unknown Party #5, and Corizon from the action, and dismiss Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits by Plaintiff.[2] *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."); *Carney*, 2008 WL 485204, at *3 (same). Plaintiff's policy or custom claims against the county and the sheriff, and his access to the courts claim against Defendant Steele remain to be screened under the PLRA.

---

[2] Plaintiff is cautioned, again, that he must limit all future actions to claims and Defendants that are transactionally related to one another.

### III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

14

identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Conditions of confinement

Plaintiff's claims that the jail is too cold, the cleaning supplies are inadequate, the hot water is inadequate, the hygiene supplies are inadequate, or that exercise opportunities are inadequate are "conditions of confinement" claims.  For convicted inmates, such claims implicate the Eighth Amendment's protection against cruel and unusual punishment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

An Eighth Amendment claim comprises objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).  A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety.  *Farmer*,

511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837. Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close to common-law recklessness. *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4).

Plaintiff, however, is not in the jail as a convicted inmate; he is a pretrial detainee. The protection afforded pretrial detainees arises not from the Eighth Amendment, but from the Fourteenth Amendment Due Process Clause. Although courts have long-recognized that due process affords pretrial detainees at least the same protection provided convicted inmates under the Eighth Amendment, the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), recognized that the protection afforded pretrial detainees from the use of excessive force under the Fourteenth Amendment is even broader than that available to convicted inmates under the Eighth Amendment. The Fourteenth Amendment protection may not require as strong a showing regarding the subjective element.

But, neither the Sixth Circuit nor the Supreme Court has clearly indicated whether the deliberate-indifference standard of the Eighth Amendment (requiring both objective and subjective components), which traditionally has been applied to prison detainees' conditions-of-confinement claims (such as denials of medical care or cell conditions), is affected by the holding in *Kingsley*. *See Martin v. Warren Cty.*, No. 19-5132, 2020 WL 360436, at *4 n.4 (6th Cir. Jan. 2, 2020) (declining to address the question) (citing *Richmond v. Huq*, 885 F.3d 928, 937 n.3 (6th

16

Cir. 2018) (observing that *Kingsley* calls into serious doubt whether a pretrial detainee must demonstrate the subjective element of the deliberate-indifference standard, but not reaching the issue)).  Nevertheless, the Sixth Circuit has, in certain unpublished decisions, continued to apply the deliberate-indifference standard without considering *Kingsley*.  *See McCain v. St. Clair Cty.*, 750 F. App'x 399, 403 (6th Cir. 2018); *Medley v. Shelby Cty. KY.*, 742 F. App'x 958, 961 (6th Cir. 2018).

Other circuits have split on the question.  The Fifth, Eighth, and Eleventh Circuits have retained the deliberate-indifference standard when analyzing Eighth Amendment claims that fall outside the excessive-force context.  *Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018) (retaining the deliberate indifference standard in medical); *Dang ex rel. Dang v. Sheriff, Seminole Cty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 n.4 (5th Cir. 2017).  In contrast other courts of appeal have changed their standards in light of *Kingsley*.  *See Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).

In the instant case, however, Plaintiff has failed to state a claim because his allegations do not satisfy the objective requirements; therefore, any differences between Fourteenth Amendment protection for detainees and Eighth Amendment protection for convicted inmates with regard to the subjective element is immaterial.  Plaintiff complains that the cell and facility temperatures are uncomfortable, that they are provided watered down sanitizer to clean the showers, that water for showering or washing is room temperature, that he wants more soap and toothpaste, and that his razor becomes dull before he is provided a new one.  These concerns simply

do not evidence a deprivation of the minimal civilized measure of life's necessities.  They are more in the nature of inconveniences.

Plaintiff's complaint regarding exercise also fails to rise to satisfy the objective requirement.    He complains that his floor—presumably referencing Plaintiff's stay in segregation—does not have an outside basketball court or recreation room like every other floor has.  His complaint is not so much that he cannot exercise but that he cannot get "regular exercise outdoors."  (Compl., ECF No. 1, PageID.26.)  Again, that is not a deprivation of the minimal civilized measure of life's necessities.

Accordingly, Plaintiff has failed to state a claim for violation of his Fourteenth Amendment rights based upon the conditions of his confinement.

**B.**    **Access to the courts**

Plaintiff's other "policy or custom" claim relates to the county's policy for use of the jail law library.  It is well established that prisoners have a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id*. at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id*. at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also*

*Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id*. at 416.

Plaintiff claims he was entitled to more law library time to pursue his defense in the criminal prosecution, to pursue civil rights claims (most likely the claims he raises herein), and to collaterally attack prior convictions by way of motions for relief from judgment.

Plaintiff is not entitled to law library time to defend against his present criminal prosecution.  The state satisfies its obligation to provide a criminal defendant access to the courts by providing appointed counsel in a criminal proceeding.  Where a criminal defendant chooses to reject appointed counsel, it is likely to impair meaningful access to the courts; however, that is simply one of the rights he gives up when he knowingly and intelligently waives his right to counsel.  *See United States v. Smith*, 907 F.2d 42, 44-45 (6th Cir. 1990) ("We find that by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library."); *see also United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) ("'[T]he state does not have to provide access to a law library to defendants in criminal trials who wish to represent themselves[.]'"); *McBee v. Campbell Cty. Det. Ctr.*, No. 17-5481, 2018 WL 2046303, at *3 (6th Cir. Mar. 15, 2018) ("A pretrial detainee voluntarily proceeding in a criminal case pro se is not constitutionally entitled to access to a law library.").

The Supreme Court has acknowledged a circuit split on this issue, *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005); however, the Sixth Circuit's position is clear and binds this Court. Therefore, Plaintiff has failed to state a claim for denial of access to the courts by virtue of the Defendants' failure to give him law library time to work on his criminal defense.

Plaintiff is entitled to access the courts to raise claims under 42 U.S.C. § 1983, but he has not alleged any lost remedy.  Indeed, he is pursuing a remedy for alleged constitutional violations in this lawsuit—he has successfully accessed the courts to raise his claims; therefore, he has not "lost" anything by Defendants failure to provide him access to a library.

With regard to Plaintiff's collateral attacks on prior convictions, he has alleged that his motions for relief from judgment were denied because the county's policy, as adopted and enforced by the sheriff, and applied by Defendant Steele, failed to provide him access to the law

library. Plaintiff's allegations, therefore, state a claim for denial of access to the courts with regard to collateral attacks on his prior convictions.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants McNeill, Devarmer, Garcia, Unknown Party #1, DeVries, Weber, Unknown Party #2, Dykema, Unknown Party #3, Unknown Party #4, Fliwenta, Unknown Party #5, and Corizon, are misjoined to his claims against Kent County (as the substituted Defendant for Kent County Correctional Facility), the Kent County Sheriff, and Rob Steele. Accordingly, Defendants McNeill, Devarmer, Garcia, Unknown Party #1, DeVries, Weber, Unknown Party #2, Dykema, Unknown Party #3, Unknown Party #4, Fliwenta, Unknown Party #5, and Corizon, will be dropped as parties and Plaintiff's claims against them dismissed without prejudice.

Moreover, Plaintiff's Fourteenth Amendment claims regarding the conditions of his confinement against Defendants Kent County, the Kent County Sheriff, and Rob Steele will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's "access to the courts" claims against Defendants Kent County, the Kent County Sheriff, and Rob Steele for denying Plaintiff law library time to pursue his federal civil rights claims and defend against the criminal charges he currently faces. Plaintiff's "access to the courts" claims against Defendants Kent County, the Kent County Sheriff, and Rob Steele regarding his collateral attacks on prior convictions remain in the case.

21

An order consistent with this opinion will be entered.


Dated:   April 24, 2020                              /s/ Janet T. Neff
                                                     Janet T. Neff
                                                     United States District Judge